**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**JOHN WEAVER,** *as Guardian and on*               **PLAINTIFF**
*Behalf of J.D.W., a Minor*

**V.**                **CAUSE NO. 3:13-CV-755-CWR-LRA**

**STATE FARM FIRE AND CASUALTY**             **DEFENDANTS**
**COMPANY; C. DAVID WEBER; JOHN**
**DOES 1-10**

## <u>ORDER</u>

Before the Court are State Farm Fire and Casualty Company's motion for summary judgment, John Weaver's motion for summary judgment, and motions to strike filed by both State Farm and Weaver. The motions are fully briefed. Having considered the arguments, evidence, and applicable law, the Court is now ready to rule.

### I.     Factual and Procedural History

The following facts are undisputed.

Rhonda Rhea died in May 2007 from multiple sclerosis. At the time of her death, she was the sole owner of her home in Carthage, Mississippi, which was insured by State Farm. Rhea's will named her boyfriend, Bruce Manion, as her sole primary beneficiary.

The day after her death, State Farm agent David Weber added Manion's name to the policy. The next month, Weber removed Rhea's name from the policy. Docket No. 15-3, at 2.

In June 2007, Rhea's will was probated in the state courts of Mississippi. Rhea's daughter, J.D.W., challenged the will.[1]

---

[1] After filing the will contest, J.D.W., through her father and next friend, filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction in the Chancery Court of Leake County averring that such an order was needed to preserve the assets in issue in the will contest; that there was a substantial likelihood that Manion would transfer and dispose of the funds in controversy; and that she would be irreparably injured if the chancery court did not take immediate action to protect her. *See* Docket No. 15-6. The court took immediate action, in part, by

While the will contest was pending, in September 2008, the police attempted to arrest Manion on charges of sexually assaulting J.D.W. Manion barricaded himself inside Rhea's home and set two fires in it. He died of smoke inhalation. The home suffered extensive damage.

Manion's estate made a claim on the homeowners insurance policy. State Farm responded in two ways. First, in October 2008, State Farm sent Manion's estate *and* Rhea's estate reservation of rights letters. Docket Nos. 15-7, 15-8. The letters acknowledged that "the Estate of Rhonda Rhea has not been released from Probate; therefore, there is a question as to whether Bruce Manion is the rightful owner of the property." *Id.* Second, in December 2008, State Farm sent Manion's estate (and only Manion's estate) a letter denying the claim, reasoning that the damage was not covered because it did not result from an accident. Docket No. 19-6.

In November 2009, the state courts of Mississippi determined that J.D.W. was the sole heir of her mother's estate. She now owned her mother's home.

At some point, J.D.W. must have sought the proceeds of her mother's homeowner's insurance policy from State Farm, reasoning that as the heir and owner of the property which had a fully-paid policy of homeowners insurance in force when it was damaged by fire, she was entitled to the policy proceeds. State Farm's denial, if one exists, is not in the record, but this suit commenced on December 4, 2013. Because it was filed when J.D.W. was a minor, her interests are represented in this action by her father and former guardian, John Weaver.

The parties agreed to file early dispositive motions and proceed to discovery only if J.D.W.'s claims survive State Farm's present arguments.

---

removing Manion as the Executor of Rhea's estate and revoking the Letters Testamentary which had been issued to him. Docket No. 15-12.

## II.    Arguments

State Farm first contends that J.D.W.'s suit was untimely. It argues that the three-year statute of limitations started on December 30, 2008, when it sent Manion's estate a reservation of rights letter. J.D.W.'s incapacity – being a minor – did not toll the statute of limitations, State Farm says, because she had a guardian ad litem or a guardian from then until she became an adult in February 2014. Alternatively, State Farm argues that J.D.W. had no insurable interest in the property at the time of the fire, that J.D.W. was neither a named insured nor in privity of contract with State Farm, and that no one can recover on the policy because the fire was not an accidental loss.

## III.    Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations and quotation marks omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

3

Because this case is proceeding in diversity, the applicable substantive law is that of the forum state, Mississippi. *Capital City Ins. Co. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011). State law is determined by looking to the decisions of the state's highest court. *St. Paul Fire and Marine Ins. Co. v. Convalescent Servs., Inc.*, 193 F.3d 340, 342 (5th Cir. 1999).

## IV.     Discussion

### A.      Statute of Limitations

Under Mississippi law, a minor with one or more civil causes of action "may bring the actions within the times in this chapter respectively limited, after his disability shall be removed as provided by law." Miss. Code Ann. § 15-1-59. This means "the statute of limitations is tolled until the disability of infancy is removed upon emancipation." *Shelnut v. Dep't of Human Servs.*, 9 So. 3d 359, 366 (Miss. 2009) (citation omitted). This law is often referred to as the "minor's savings clause."

Applied here, the minor's savings clause means the statute of limitations would start to run against J.D.W. on her 21st birthday. Because the parties agree that the statute of limitations in this case is three years, J.D.W. would have had until her 24th birthday to file suit. It is undisputed that she filed this suit *before* she turned 21, years in advance of that deadline.

State Farm nevertheless argues that the clock started in December 2008 when it sent a denial letter to Manion's estate. It is not obvious why that letter should have started the statute of limitations as to J.D.W. She was not the executrix of Manion's estate. J.D.W., in fact, was *adverse* to Manion's estate: in her view, Manion had wrongfully siphoned her mother's assets and converted them to his own use by undue influence. *See* Docket No. 15-6, at 3-5 (J.D.W.'s July 1, 2008, Emergency Motion for Temporary Restraining Order and Preliminary Injunction

4

against Manion, which argued that Manion's "actions have resulted and continue to result in irreparable injury, loss, and damage to [J.D.W.]").

State Farm's suggestion that the clock started because Manion's estate could have filed suit in December 2008 does not credit the discovery rule; neither Rhea's estate nor J.D.W. could have sued until they knew or reasonably should have known about the denial.[2] The record is not clear about when that occurred. State Farm's further suggestion that sending Manion's estate and only Manion's estate a denial letter was sufficient to start the clock, owing to the fact that Manion was the only named insured at that point, fails to acknowledge Rhea's estate's continued interest in the insurance proceeds, which State Farm had earlier recognized by sending Rhea's estate the reservation of rights letter in October 2008. Given the reservation of rights letter, why did State Farm *not* send Rhea's estate the denial letter in December 2008? The omission is not explained.

In any event, State Farm's main contention is that the presence of a guardian ad litem, and then a guardian, for J.D.W. from 2007 to 2014 means one of those persons should have filed this suit on her behalf by December 2011. It argues that while J.D.W.'s guardian ad litem specially sought out Rhea's life insurance proceeds and J.D.W.'s father went so far as to pursue a legal malpractice claim against the first court-appointed executor of Rhea's estate, neither guardian pursued the fire insurance claim. For support, State Farm invokes Mississippi Code § 15-1-53 and a Mississippi Court of Appeals case construing that statute, *In re Conservatorship of Lewis*, 110 So. 3d 811 (Miss. App. 2013), which found that a statute of limitations ran against the conservator of an incapacitated adult.

---

[2] State Farm's authority for its position, *Anderson v. LaVere*, 136 So. 3d 404, 412 (Miss. 2014), also supports application of the discovery rule, as the case held that the plaintiffs' statute of limitations began to run when they first became "aware of their injury."

Section 15-1-53 reads, in its entirety, as follows:

> When the legal title to property or a right in action is in an executor, administrator, guardian, or other trustee, the time during which any statute of limitations runs against such trustee shall be computed against the person beneficially interested in such property or right in action, although such person may be under disability and within the saving of any statute of limitations; and may be availed of in any suit or actions by such person.

This statute "does not apply when the right is that of the minor's, to be asserted by the guardian in the minor's name." *Wilson v. Wilson*, 464 So. 2d 496, 498 (Miss. 1985) (citation omitted). In other words, "where the minor holds the legal right, the statute of limitations does not begin to run until the disability of minority is removed." *Id.*

For present purposes, the Court will assume that the executor of Rhea's estate learned of State Farm's denial letter in December 2008.[3] At that time, the executor should have sued State Farm to amplify the amount of funds going into Rhea's estate. The executor had the authority to pursue such a suit under Mississippi Code § 91-7-233, which states that "[e]xecutors, administrators, and temporary administrators may commence and prosecute any personal action whatever, at law or in equity, which the testator or intestate might have commenced and prosecuted."

Assuming the statute of limitations ran against the estate from December 2008 into 2009, the difficult question is what happened to the statute of limitations in November and December 2009, when J.D.W. was declared the sole heir of Rhea's estate, J.D.W.'s guardian ad litem was discharged, and J.D.W.'s father was appointed as her guardian.[4]

---

[3] This assumption, and what follows, renders moot arguments concerning the running of the statute of limitations while J.D.W. had a guardian ad litem, as it essentially overlaps with the time the executor should have filed suit. In other words, even if J.D.W.'s guardian ad litem had a duty to file suit for the year or so of his guardianship, the clock was tolled again when the right to sue vested in J.D.W.

[4] According to State Farm, Rhea's estate did not formally close until July 2012. Docket No. 16, at 10.

From that moment forward, a suit by the executor of Rhea's estate would not have been appropriate. *See Weir v. Monahan*, 7 So. 291, 296 (Miss. 1890) ("The right of the administrator . . . expired because of the changed condition of the estate, and no longer exists."). Under Mississippi law, the executor's right to sue flowed into the estate's sole heir – J.D.W. *See* Miss. Code Ann. § 91-1-29 (providing that sole heirs at law are "placed in possession of [the decedent's] estate"). The claim for insurance proceeds now belonged to her and her alone. Since J.D.W. was a minor, though, the minor's savings clause once again operated to toll the statute of limitations until her 21st birthday. Here, as in *Weir*, "[t]his is not a case in which the statute, once having commenced to run, runs uninterruptedly, notwithstanding the absence of a person competent to sue." *Weir*, 7 So. at 296.

The fact that J.D.W.'s father was appointed her guardian in December 2009 does not change this conclusion. The right to sue now belonged to J.D.W., not her guardian, so § 15-1-53 did not keep the clock running. *Accord id.*; *Wilson*, 464 So. 2d at 498; *Talbert v. Henderson*, 688 F. Supp. 250, 252 (S.D. Miss. 1987) ("this statute does not apply because by its terms it applies only where the legal title to property or a right in action is in the conservator as opposed to the ward; such is not the case here"). In addition, it is not obvious that J.D.W.'s father had, as guardian, the authority to pursue the fire insurance claim. *Compare* Miss. Code Ann. § 93-13-15(a) ("Every guardian of any ward . . . is in fact a general guardian *to the extent of his appointment according to the terms of the order or decree of appointment . . . .*") (emphasis added) *with* Docket No. 22-2, at 2 (Order appointing J.D.W.'s father as her guardian "for the limited purpose of conserving and properly expending the funds allocable to [J.D.W.] through the estate proceedings . . . .").

On a more fundamental level, it is not clear that the word "guardian" in § 15-1-53 causes the statute of limitations to run when the guardian is the minor's *parent*. This point warrants some explanation.

We know that under Mississippi Code § 93-13-1, a "father and mother are the joint natural guardians of their minor children and are equally charged with their care, nurture, welfare and education, and the care and management of their estates." We also know that under Mississippi Code § 15-1-59, the minor's savings clause, a child is not held responsible for their parent's failure to file a lawsuit on the child's behalf. *See Shelnut*, 9 So. 3d at 366; *Pollard v. Sherwin-Williams Co.*, 955 So. 2d 764, 769-70 (Miss. 2007) (explicitly overruling the Court of Appeals' holding that the minor's savings clause was inapplicable because the suit was brought "by and through [the child's] natural mother, legal guardian, and next friend"); *Lawler v. Gov't Employees Ins. Co.*, 569 So. 2d 1151, 1152-53 (Miss. 1990); *Wilson*, 464 So. 2d at 499 ("To bar the child because of a parent's failure to timely assert the child's claim for support is to deprive the child of that support which belongs to him for reasons over which the child has no control."). But it is not possible for all parents to be guardians, and for children to be relieved of responsibility for their parents' legal omissions, if Mississippi Code § 15-1-53 excepts *all* guardians from the tolling provisions of the minor's savings clause.

It follows that in § 15-1-53, although the statute of limitations runs against executors, conservators, guardians, and other trustees, "guardian" *here* has to mean a non-parental relationship of protection. The word "guardian" retains a role in the statute because it ensures that those who serve as conservators and guardians *of adults* (*e.g.*, for an elderly parent) are not treated any differently from each other.[5] *See Harvey v. Meador*, 459 So. 2d 288, 291-92 (Miss.

---

[5] Guardians of minors are different in other ways, too. Unlike conservators, trustees, and other legal representatives, the rights and responsibilities of guardians over minors lasts only for a specific, readily identifiable period: until the

1984) (discussing similarities and differences of conservatorships and guardianships). But the clock cannot run against parents in their role as parents. If every parent were a guardian for the purposes of § 15-1-53, the minor's savings clause would be rendered meaningless: the statute of limitations would run against every child immediately, simply because their parent was also their legal guardian. As a result, every child would be held responsible for their parent's failure. That cannot be the case in light of numerous Mississippi Supreme Court cases declining to hold children so responsible.[6] *See supra.*

In this case, despite the running of the statute of limitations from Rhea's executor's discovery of State Farm's denial letter to the closure of Rhea's estate, the statute of limitations could not run against J.D.W. once she obtained the right to sue. Under Mississippi law the right to sue belonged to her, not her father; she was too young to be forced to litigate; and the law does not punish children by revoking the minor's savings clause when their parental guardian fails to file suit.

## B.    Standing

State Farm next argues that J.D.W. lacks standing to bring this suit because she lacks an insurable interest in the property and because she was not in privity of contract with State Farm.

"The general rule in Mississippi . . . is that an insurable interest must exist in an insured when the contract is entered for it to be effective." *Mississippi Farm Bureau Mut. Ins. Co. v. Todd*, 492 So. 2d 919, 931 (Miss. 1986) (citation omitted). "The principle may be stated generally that anyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its d[e]struction." *Se. Fid. Ins. Co. v. Gann*, 340 So. 2d 429,

---

minor turns 21. The disability which has caused a conservator to be appointed may never be removed, and a trustee's term is as long as the testator/settlor wants the person to serve.

[6] The Court has a duty to try and reconcile competing strands of Mississippi law to ensure that no statute is rendered a dead letter. *See G.M. Trading Corp. v. C.I.R.*, 121 F.3d 977, 981 (5th Cir. 1997) ("Where possible, every word in a statute should be given meaning.").

434 (Miss. 1976) (quotation marks and citation omitted); *see Necaise v. U.S.A.A. Cas. Co.*, 644 So. 2d 253, 258 (Miss. 1992).

Rhea obviously had an insurable interest when she commenced the policy and paid the premium. Although she died before the fire, State Farm acknowledges that Rhea's *estate* had an insurable interest in the property at the time of the loss, but claims that J.D.W. did not. Its supporting authority consists of two cases in which plaintiffs who had transferred their property rights or lost their homes unsuccessfully attempted to secure insurance proceeds on losses which occurred post-transfer.

Rhea's insurance policy provided that if she died, State Farm would "insure the legal representative of the deceased." Docket No. 15-1, at 32. That is likely why State Farm agrees that her estate had an insurable interest at the time of the fire. The term legal representative, however, has been construed to include not just one's estate or executor, but also one's heirs. *Hill v. James*, 175 So. 2d 176, 178-79 (Miss. 1965). As J.D.W. was her mother's sole heir, she succeeded to the insurable interest of her mother's estate upon her victory in the will challenge.

It seems relevant that funds from Rhea's estate were used to pay the insurance premium. Docket No. 19-4, at 2-3; *see Necaise*, 644 So. 2d at 256 (considering, in case regarding sharing of insurance proceeds, "whether the owners of the other interests contributed to the cost of the insurance"). Those funds were paid out of a corpus that belonged to J.D.W. In that sense, then, J.D.W. has a personal stake in this lawsuit, since she has expended money on an insurance policy which now claims to not cover a fire on the premises she owns.

State Farm's supporting cases are not to the contrary. They involved claims where the plaintiffs no longer had any property interest in their homes. Here, though, despite having to

unwind Manion's malfeasance, J.D.W. owned her mother's property. She has a stake in recovering the insurance proceeds necessary to make that property whole.

State Farm also presses the idea that J.D.W. cannot recover because she was not in privity of contract with State Farm, citing a case which states that "fire insurance is an indemnity to the insured and the proceeds thereof do not run with the land." *Estate of Murrell v. Quin*, 454 So. 2d 437, 439 (Miss. 1984) (quotation marks and citation omitted).

The above analysis sufficiently explains why the contract's terms provide an avenue for J.D.W. to seek recovery from State Farm as the sole heir of the insured. The contract contemplates the prospect of recovery by persons not in privity of contract. *See* Docket No. 15-1, at 25 (insurable interest provision), 26 ("We will pay you unless some other person is named in the policy or is legally entitled to receive payment."). Even assuming the continued validity of *Quin*,[7] which involved a different contract, State Farm's argument is unavailing.

### C.     Accidental Versus Intentional Loss

State Farm's final contention is that no one can receive the insurance proceeds because the policy does not cover intentional acts. It claims J.D.W. cannot meet her burden to prove that the fires Manion set were not intentional acts.

"Under Mississippi law, unless the policy specifically states that it is viewed from the perspective of the insured, it will be viewed from the perspective of the *injured*." *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 432-33 (Miss. 2006) (citations omitted). As an example, the Mississippi Supreme Court has found that "injuries sustained by a person while defending

---

[7] Subsequent developments in Mississippi law, from *Sullivan v. Estate of Eason*, 558 So. 2d 830, 833 (Miss. 1990) to *Necaise v. U.S.A.A. Cas. Co.*, 644 So. 2d 253, 256 (Miss. 1992), suggest that *Quin*'s simple statement has been reformulated into a multi-factor, equitable test. The test was not raised in State Farm's opening brief and therefore may not be necessary to apply. It may be noted, though, that the Court's earlier discussion of one of those factors – payment of the premium – favored J.D.W., and the fact that J.D.W. succeeded in the will contest casts doubt on State Farm's rebuttal arguments that the other equitable factors do not favor her because of an alleged "estrangement." That was an issue for the state court to consider and cannot be relitigated here.

himself from an unprovoked assault are within the terms of a policy insuring him against injury accidentally inflicted – that an injury inflicted on one who did not voluntarily enter into the affair in which he was injury is an accident." *Georgia Cas. Co. v. Alden Mills*, 127 So. 555, 557 (Miss. 1930) (collecting cases). The court reasoned that "[a]n injury may be said objectively to be accidental, though subjectively it is not; and, if it occurs without the agency of the insured, it may logically be termed accidental, though it was brought about designedly by another person." *Id.* (quotation marks and citation omitted); *see E.E.O.C. v. S. Pub. Co.*, 705 F. Supp. 1213, 1217-18 (S.D. Miss. 1988) ("in the instant case, from the standpoint of Corn and Honeycutt, the 'victims' of the assault and battery, the injury to them was 'accidental' since the injury was the result of an external force, not of their choice or provocation").

According to J.D.W., the policy does not specifically state that it is viewed from the perspective of the insured. State Farm's rebuttal brief does not dispute the point. It therefore must be viewed from the perspective of her, the injured party.

It is presently undisputed that J.D.W. did not set the fires or provoke Manion to do so. She did not voluntarily place herself in this position. From her perspective, the property damage was "accidental" as that term is understood in this context.[8]

### D.    The Remaining Motions

The parties had agreed to file their dispositive motions by May 16, 2014. Docket No. 13. That day, counsel for defendants filed a dispositive motion on behalf of State Farm only. Summary judgment was not sought as to the other defendant, David Weber. Counsel for plaintiff did not file any dispositive motion that day.

---

[8] Here, the Court has resolved the legal dispute concerning whose perspective must be considered in the determination of "accidental" versus "intentional" injuries. State Farm reserves its right to contest at trial the factual question of who started the fires.

Each side later tried to circumvent the agreed deadline. On June 16, 2014, counsel for plaintiff filed a motion for summary judgment, which was met with State Farm's motion to strike. Docket No. 21. Counsel for defendants then attempted to use its reply brief to bootstrap David Weber into State Farm's motion for summary judgment, which was met with a motion to strike from the plaintiff. Docket No. 24.

The parties' scheduling agreement will be honored. The plaintiff's cross-motion was untimely and will not be considered at this juncture. Weber too will be prohibited from seeking summary judgment after the agreed-upon deadline. Both may seek summary judgment after discovery as to issues not encompassed by today's ruling.

## V.      Conclusion

For these reasons, State Farm's motion for summary judgment is denied, the plaintiff's cross-motion for summary judgment is stricken, State Farm's motion to strike is granted, and the plaintiff's motion to strike is granted. Within 10 days, the parties are to contact the chambers of the Magistrate Judge for entry of a new scheduling order.

**SO ORDERED**, this the 14th day of January, 2015.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE